IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,
        Plaintiff,    CASE NUMBER 1:01-CR-025-01

      vs.

                       Harrisburg, Pennsylvania
MONROE HAWKINS,        24 July 2002
        Defendant.   11:00 a.m.

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE WILLIAM W. CALDWELL
UNITED STATES DISTRICT JUDGE

VOLUME 1 OF 2

A P P E A R A N C E S

For the Plaintiff:
    William A. Behe, Assistant United States Attorney
    United States Attorney's Office
    Federal Building, Room 217
    228 Walnut Street
    Harrisburg, Pennsylvania  17108

For the Defendant:
    Anthony N. Thomas, Esquire
    Thomas & Associates
    3111 North Front Street
    Harrisburg, Pennsylvania  17110

Reported by Glenda S. Travitz, Registered Professional Reporter.

1          MR. BEHE:  Good morning, Your Honor.  Your
2  Honor, this is the matter of United States of America
3  versus Monroe Hawkins at Criminal Docket Number
4  01-025-01.  Mr. Hawkins is present before you with
5  counsel, Mr. Thomas.  Now is the time and place set for
6  sentencing in this matter.  I believe Mr. Thomas has
7  some outstanding objections to the pre-sentence report.
8          THE COURT:  All right.  Mr. Thomas, do you
9  want to pursue those objections?
10          MR. THOMAS:  Yes, Your Honor.  First, we'd
11  like to state simply that we appreciate the Court's
12  understanding and indulgence for granting the
13  continuance the last time.  We do appreciate that.
14          Your Honor, the defendant, Mr. Monroe, has
15  several objections to the Pre-Sentence Investigation
16  Report.  Not necessarily most importantly but at the
17  outset is the calculation of the drug amounts.  The
18  drug amounts were clearly based on a review of a
19  transcript, not based on --  They simply were not in
20  keeping with what the record holds.
21          And we understand that according to the
22  Apprendi decision that any fact that increases the
23  penalty for a crime--in this case, it does--increases
24  it more than what the statute allows, that it has to be
25  submitted to a jury and proved beyond a reasonable

1  doubt.

2          Based on the calculations in the

3  Pre-Sentence Investigation Report, the calculations

4  come up to -- are between 50 and 150 kilograms.  We

5  have recalculated those numbers and found that the drug

6  amounts, just based on the trial testimony alone and

7  just based on what's available in the record--and we

8  have that information to provide for the Court--is

9  under 15 grams.  And --

10          THE COURT:  Fifteen grams?

11          MR. THOMAS:  I'm sorry.  Fifteen

12  kilograms.  Yes, Your Honor.

13          THE COURT:  Okay.

14          MR. THOMAS:  Your Honor, we are prepared

15  to pinpoint and to direct the Court's attention to

16  those sections of the trial transcripts and the record

17  that support our contention that it is under 15

18  kilograms.

19          THE COURT:  Mr. Behe, do you want to

20  respond to that, sir?

21          MR. BEHE:  Yes, Your Honor.  There was a

22  correction to the Pre-Sentence Investigation Report

23  made by the probation department in this matter that

24  did, in fact, lower the range in this case, based on

25  the drug computation, to be at least 15 but less than

1  50 kilograms, not the original in excess of 50

2  kilograms.

3          I must say that was my fault, the original

4  calculation.  At the time that I was asked to prepare a

5  submission to probation, I did alert them that I'm

6  going on memory.  It was a trial, and I was sitting and

7  reviewing reports.  I didn't have the benefit of the

8  trial transcript.  And based on my review of the

9  reports, that 50 to 150 was the range that I came up

10 with.

11          After the report was prepared, however, I

12 guess Mr. Thornton and Mr. Thomas had the transcripts

13 prepared.  And upon review of them, we now have

14 conceded that range was high, the 50 to 150.

15          I don't think Apprendi applies at all.

16 The jury found in this case that the amount of cocaine

17 that was involved in this case would allow for a

18 sentence of imprisonment of up to life.  There is no

19 Apprendi issue in this case.  Apprendi doesn't apply to

20 the guidelines in this matter.  As long as the

21 guideline range fits within the statutory maximum,

22 that's fine.  The jury here found specifically that the

23 amount of cocaine involved would allow for up to life

24 imprisonment, so there really is no Apprendi issue.

25          I think the main issue and the main

1    dispute in this is that Mr. Thomas, on behalf of

2    Mr. Hawkins, maintains that relevant conduct would not

3    permit the Court to consider the cocaine distribution

4    activities that his client was involved with in '93

5    and '94 before he went to prison for a brief period of

6    time and into a halfway house.  If that is considered,

7    Mr. Hawkins himself admitted that the amount was at

8    least nine kilograms.  His runner said it was closer to

9    20 kilograms during that period of time.  If you take

10    the testimony of Mr. Heim and from Mr. Rosenberger and

11    the others and consider that testimony, you are well in

12    excess of the 15 kilograms.  Mr. Thomas's position is

13    the Court can't consider that.

14           I think it's relevant conduct for the

15    simple reason that the theory that Mr. Hawkins had been

16    proceeding on and is proceeding on now is flawed, and

17    that is that his prior drug conviction took into

18    account everything he did before he went to prison.

19    Well, that's not true.

20           The drug conviction for Mr. Hawkins was

21    based on the fact that when he was arrested in '94 on

22    the basis of an outstanding warrant they found cocaine

23    on his person.  It had nothing to do with any

24    investigation, him being involved in drug distribution,

25    sending couriers to New York, bringing it back and

1    making substantial amounts of money here in the

2    Harrisburg area.  In other words, it was an isolated

3    incident that had nothing to do with that.

4            Under the relevant conduct provisions of

5    the guidelines, the Court can look at whether or not

6    the conduct relates to the conduct of the conviction.

7    Here Mr. Hawkins used the same source, the same city,

8    the same courier.  The only thing that happened was

9    there was a brief period of time where his

10   incarceration prevented him from dealing with

11   Mr. Bennett to make these runs.  No sooner does he get

12   into the halfway house in April of '96 than he picks up

13   again with the same courier, the same source, the same

14   city.

15           So I don't think he should benefit by this

16   abated period of time and a prior conviction to say

17   that you can't consider the fact that there was at

18   least nine, by his own admissions, or up to 20 kilos

19   that came in during that period of time.

20           I guess initially if Your Honor disagrees

21   with me I would say that that would probably take it

22   into the range Mr. Thomas suggests.  If Your Honor

23   believes that that can be considered as relevant

24   conduct, along with the trial testimony, we're at least

25   in the twenty-some kilo range.

1          THE COURT:  I don't have the file with me.

2   But is there a period in the indictment?

3          MR. BEHE:  Yes.  The indictment begins

4   from on or about, I believe, August or September of

5   1996 up to and including 1998.

6          THE COURT:  The relevant conduct you're

7   speaking of, does that predate the --

8          MR. BEHE:  Yes.  It's '93 to '94.

9   Mr. Hawkins went to jail, I believe, in July or

10  something of '94.

11         THE COURT:  I'm concerned from a legal

12  standpoint as to whether or not the Court may consider

13  conduct that predates the charges in the indictment.

14         MR. BEHE:  Yes, you may, under relevant

15  conduct.  I think it's quite specific in that regard.

16  If I could refer the Court to, particularly, common

17  scheme or plan and same course of conduct, specifically

18  Section 1B1.3, which deals with relevant conduct.  It

19  says that the Court may consider conduct that were part

20  of the same course of conduct or common scheme or plan

21  as the offense of conviction.

22         Now, in Paragraph 9 of the commentary, the

23  common scheme or plan and same course of conduct are

24  described for the Court and are defined.

25         THE COURT:  Let me just get that in front

1    of me.

2              MR. BEHE:   Yes, Your Honor.

3              THE COURT:   Are we looking at the 2001

4    edition?

5              MR. BEHE:   Yes, Your Honor, that's what

6    I'm referring to.

7              THE COURT:   Effective November 1st 2001?

8              MR. BEHE:   Yes, Your Honor.

9              THE COURT:   1B1 --

10              MR. BEHE:   Point three.

11              THE COURT:   Okay.

12              MR. BEHE:   There, Your Honor, in Paragraph

13   9 of the commentary under the Application Notes, same

14   course of conduct is defined.   It says that offenses

15   that do not qualify as part of a common scheme or plan

16   may nonetheless qualify as part of the same course of

17   conduct if they are sufficiently connected or related

18   to each other as to warrant a conclusion that they are

19   part of a single episode or spree or ongoing series of

20   offenses.   Factors that are appropriate to consider in

21   the determination of whether the offenses are

22   sufficiently connected or related to each other to

23   consider this include the degree of similarity of the

24   offenses, the regularity, repetition of the offenses,

25   the time interval between the offenses.

1              And when those are considered in this
2    case, I would suggest that the interruption of
3    Mr. Hawkins going to prison until he's released in a
4    halfway house in April of '96 should not preclude the
5    Court from considering this.
6              This isn't a legal question of whether or
7    not a conspiracy terminates by somebody withdrawing
8    from it or being unable to participate in that conduct.
9    This is a question of whether or not that conduct that
10   he engaged in with Mr. Bennett can be considered by the
11   Court.  I think either under the common scheme or plan
12   or same course of conduct that should be considered by
13   the Court and included.
14             THE COURT:  Well, my --  I will state at
15   this point at least that I agree with the government
16   that there is no Apprendi issue present in this case.
17             But I will hear you, Mr. Thomas, if you
18   want to respond to whether or not the relevant conduct
19   that has been referred to may be considered by me in
20   determining the quantity of cocaine.
21             MR. THOMAS:  Yes, Your Honor.  At the
22   outset, with regard to the Apprendi decision, we
23   believe that there's only an issue there because the
24   enhancement will subject the defendant to an enhanced
25   sentence.  Then, by doing that, the drug amounts then

1    have to be an element of the offense under the _Apprendi_

2    decision, without regard to -- We understand the

3    _Apprendi_ decision simply states that it's a matter that

4    has to be submitted to a jury and all of that.  But now

5    it becomes an element of the offense, the drug amount

6    here.  The jury came back, and they just said that he

7    was convicted and guilty of 50 kilograms or more.  I'm

8    sorry, Your Honor.  Five kilograms.

9              THE COURT:  As I understand it, though,

10    the _Apprendi_ case holds that it applies where the

11    penalty is beyond the statutory penalty for the

12    offense, which in this case can be up to life

13    imprisonment.

14              Well, in any event, I'm going to make that

15    ruling, Mr. Thomas.  Of course, that's something that

16    will be preserved for appeal.

17              Now we're to the point of whether this

18    relevant conduct is proper to be considered.

19              MR. THOMAS:  Your Honor, as relates to

20    relevant conduct from '93 and '94, the point is simply

21    that the offense of the conviction occurred during the

22    period of the indictment.  The Court correctly made the

23    inquiry about when the indictment began.  That's when

24    the investigation into the offense began, back in 1996.

25    It was during that relevant period that the activity

1    occurred.

2          According to the guidelines and in the

3    notes in the guidelines, as they were read, I believe

4    it relates to a single episode or a spree.   The

5    government has already conceded that there's been

6    termination or that the conduct or the activity ceased

7    for a period of time.   It was interrupted.   It was

8    interrupted during the time that he was incarcerated.

9          So to relate back to a common plan or

10   scheme or a single episode, Your Honor, it's simply our

11   contention that it's not a single episode.   If any

12   activity began again, which we understand there is a

13   conviction for, it was from '96 at the time of the

14   investigation and beyond.   There is no evidence in

15   addition to that, no evidence either in trial

16   transcripts or testimony that I can find, at least,

17   that there was any activity that occurred at the time

18   that he was in the halfway house.

19          THE COURT:   All right.   Well, I'm going to

20   reserve my ruling on that point.

21          MR. BEHE:   Can I just make one comment,

22   Your Honor?

23          THE COURT:   Yes.

24          MR. BEHE:   To address Your Honor's concern

25   about the difference in the time from the indictment

1    and previous conduct that I asked to be included, I

2    think that that Subparagraph B of Paragraph 9 of the

3    Application Notes speak to that, advising the Court as

4    to whether or not something can be considered as same

5    course of conduct.  They talk about the different

6    factors, the degree of similarity, the regularity.

7              THE COURT:  You've made that point.

8              MR. BEHE:  But here it says, Your Honor,

9    where the conduct alleged to be relevant is relatively

10   remote to the offense of conviction in time, a stronger

11   showing of similarity or regularity is necessary to

12   compensate for the absence of temporal proximity,

13   meaning you can consider something that isn't

14   necessarily within that time frame as long as perhaps

15   the same co-conspirator, same source, other things are

16   relatively similar.

17             THE COURT:  Thank you.

18             MR. THOMAS:  Your Honor, since we're

19   talking about an area here that is going to make a

20   significant difference in the outcome here at

21   sentencing, would the Court grant --  I understand

22   you're going to not rule today, but would the Court

23   permit us to --

24             THE COURT:  I didn't say I wasn't going to

25   rule today.  I said I'm going to withhold judgment

1    until I hear the other objections.  I want to consider

2    this a little further.

3             Let's go on with the next objection.

4             MR. THOMAS:  The next objection, Your

5    Honor, relates to the enhancement due to an organizer

6    or leader adjustment.  According to the Pre-Sentence

7    Investigation Report, the enhancement is increased by

8    four levels under 3B1.1(a), that the defendant was an

9    organizer or leader of criminal activity that involved

10   five or more participants or was otherwise extensive.

11            Your Honor, again, based on the trial

12   transcripts and the record, there is simply no evidence

13   that the activity involved any leadership activity of

14   more than five people, if any.  If any, perhaps one

15   person may be identified as someone that he acted in a

16   manager or supervisory capacity under the language of

17   the statute.

18            THE COURT:  You'll recall the testimony

19   better than I can at this point, but it seems to me

20   there were four or five runners that went to New York

21   on his behalf, according to the testimony.

22            MR. THOMAS:  Well, Your Honor, there was

23   Christian Bennett that was identified as a runner.

24   Charles Rosenberger was identified as a runner.  The

25   others, Steven Cupp and Heim, Mr. Heim was making runs

1    for himself; and there's no indication in the record,

2    in the trial transcripts, where he expressly stated

3    that he was making runs for Mr. Hawkins.  Based on that

4    alone -- And please forgive me if there are more

5    runners than the ones I just identified, but I don't

6    believe that there are.

7            THE COURT:  I think the pre-sentence

8    report refers to four or five, and I'm not sure what

9    page that is on.  Do you happen to have that?

10           MR. THOMAS:  Yes, Your Honor.  The

11   government has already conceded that this Pre-Sentence

12   Investigation Report was prepared.  As a matter of

13   fact, in it, in Paragraph 5, it says the following

14   statement of facts was submitted by Assistant U.S.

15   Attorney William A. Behe, based on his best

16   recollection of trial testimony.  So it was not based

17   on review of the transcripts.

18           THE COURT:  There's Christian Bennett,

19   Charles Rosenberger, Joseph Heim, and Maurice Young.

20   That's what the pre-sentence report says, and that's

21   what Mr. Behe reported.  But you're telling me --

22           MR. THOMAS:  Actually, Mr. Behe just told

23   the Court -- he conceded that the information that was

24   provided was based on his simple recollection.

25           THE COURT:  I understand that.  I'm just

1    trying to get the number of people involved here that

2    were runners.

3             Mr. Behe, do you want to --

4             MR. BEHE:  Yes, Your Honor.  The Paragraph

5    28 of the Pre-Sentence Investigation Report correctly

6    does not limit the analysis that the Court should use

7    to decide the role in the offense to who was a runner.

8    The question is whether or not this individual was the

9    organizer or leader of an organization or a criminal

10   activity that involved five or more participants or was

11   otherwise extensive.

12            The pre-sentence report correctly notes

13   that this defendant was involved with Christian

14   Bennett, a runner; Charles Rosenberger, a runner;

15   Joseph Heim, who was a runner at times for himself and

16   the defendant; Maurice Young, who has pled before Your

17   Honor to making trips for the defendant--he was

18   identified at trial by the name of Reese, but he's

19   listed here--Steven Cupp, and Ruth Mitchell, who was

20   the defendant's girlfriend who stored drugs at her

21   apartment for him.

22            I think that and the volume of drugs that

23   are being involved -- or that were involved in this

24   case and the defendant's role in this in introducing

25   people to the sources, to setting up the deliveries

1  show that it's otherwise extensive.  If not, that there
2  were five or more participants.
3          THE COURT:  I misspoke when I indicated
4  perhaps that we're talking about runners here.  We're
5  not talking about runners.  I agree with that.  The
6  point I was making--I didn't know what the nature of
7  the objection was going to be--there have been
8  decisions that indicate that runners qualify, can make
9  a person a leader if all you do is ask a person to be a
10  runner for you.
11          So the government is taking a position
12  that the defendant's total activity involved all these
13  people and that they were all involved in dealing with
14  drugs in one way or another.
15          With those clarifications, do you want to
16  respond to that?
17          MR. THOMAS:  Yes, Your Honor.  Under the
18  commentary to this particular code section, it requires
19  that somebody who acts in a leadership position meet
20  certain criteria.  There's different factors for the
21  Court to consider.
22          Probably most important is the exercise of
23  decision-making authority.  That decision-making
24  authority, again, just based on a review of the trial
25  transcripts, can only be attributed to that which is

1    applied to Christian Bennett and perhaps

2    Mr. Rosenberger.  But even in his testimony --  At one

3    portion of his testimony, a question was asked whether

4    or not he made runs for Monroe Hawkins; and he says no.

5    Even that, too, is in question.

6              With regard to Mr. Heim, again, there's

7    never been any express testimony that he did anything

8    in that regard, except simply make a referral, make a

9    referral of Mr. Rosenberger to Mr. Hawkins to become a

10   runner.

11             But there's no exercise of decision-making

12   authority over at least five people that's required for

13   this particular enhancement.

14             THE COURT:  I think the section that we're

15   referring to, as Mr. Behe has indicated, shows that the

16   defendant was an organizer or leader in a criminal

17   activity involving five or more criminal participants.

18   Now, are you saying these people were not involved with

19   him as criminal participants?

20             MR. THOMAS:  Your Honor, I'm suggesting

21   that there's only really, again, based on the trial

22   transcripts, only two people that can be identified as

23   participants.  Mr. Heim cannot be identified as a

24   participant.  I don't believe that Mr. Cupp is.

25   Maurice Young was -- i believe that count of the

1    indictment was dismissed.  Your Honor, you have to

2    forgive me in not recollecting.  It's a week's worth of

3    testimony.

4              THE COURT:  What about that, Mr. Behe,

5    that the record only indicates that he was leading or

6    had these two people involved in his activity?

7              MR. BEHE:  I completely disagree with

8    that.  The record in this case, Your Honor, is not

9    limited, necessarily, to the trial transcript.  Your

10   Honor has had Maurice Young plead guilty before you,

11   admitted to making runs for this defendant to New York.

12   You have Christian Bennett, who has made runs for him;

13   Charles Rosenberger, who has made runs for him; Joseph

14   Heim, who was getting drugs from the defendant, getting

15   drugs on his own as well; Ruth Mitchell, who was

16   assisting him; Steven Cupp, who testified to what he

17   was involved with the defendant.  Those witnesses were

18   called at trial to testify as to their involvement with

19   the defendant and his role in arranging for the drug

20   deals, providing for cash to be taken.

21             THE COURT:  Did Maurice Young testify?.

22             MR. BEHE:  He did not.  He was a fugitive

23   at the time, Your Honor.  But he was identified at

24   Reese by individuals involved in it.  But he was

25   apprehended and has pled guilty to Your Honor.

1          THE COURT:   Yes, I know he did.

2          MR. THOMAS:   Your Honor --

3          THE COURT:   Just a second.

4          Okay.   What else did you want to say?

5          MR. THOMAS:   Your Honor, we believe that

6   there is testimony by Christian Bennett where he said

7   something to the effect that this Reese did not make

8   runs.   We would simply have to look at the transcript

9   in order to maybe make that determination.

10          One thing we do know, Your Honor, is that

11  under the case law that direct control over others is

12  absolutely necessary to support any enhancement under

13  this section, whether it falls under A, B, or C.

14  Again, it's our contention that it's only two, so it

15  should fall --

16          THE COURT:   I think there's an argument to

17  be made here.   Based upon all the considerations before

18  me, I will apply 3B1.1(c) and increase the level by

19  two, rather than four.   So we're reducing from four to

20  two in that particular situation.

21          Are there other objections that affect the

22  calculation of the sentence?

23          MR. THOMAS:   Yes, Your Honor.   The

24  defendant objects to the enhancement due to obstruction

25  of justice.   The defendant never willfully obstructed

1  or attempted to obstruct or impede the administration
2  of justice during the course of the investigation.  He
3  simply maintained his innocence.  Any testimony that he
4  made during the trial is just simply not believed by
5  the jury, and that should not be held against him
6  simply because the jury didn't believe what he was
7  saying.

8          THE COURT:  You know, it depends, I think.
9  In this case, the question is whether he committed
10 perjury in what he did say.  I think that's an issue
11 for the Court to resolve.

12         MR. THOMAS:  Exactly.  That's the next
13 point I wanted to make, Your Honor.  There has not been
14 given any indication as to what specifically the
15 defendant is being charged with to credit this
16 enhancement.

17         THE COURT:  Well, what did he testify to?

18         MR. THOMAS:  That's our question.

19         THE COURT:  He testified, and he denied
20 being involved with these people in the matters that
21 they testified to, as I recall.

22         MR. BEHE:  Yes, Your Honor.  As a matter
23 of fact, the testimony of the defendant has been
24 transcribed as well.  During his testimony, he
25 specifically and emphatically denied ever being

1    involved with Joseph Heim in dealing drugs, a factor

2    that the jury had to consider because Mr. Heim

3    described his drug dealings with the defendant in the

4    halfway house and once he was released from the halfway

5    house, denied specifically being involved with Mr. Heim

6    in making drug runs to New York, denied ever using

7    Charles Rosenberger as a runner for him, denied that

8    Rosenberger ever rented cars for him when we had a

9    chart that showed all the rentals that Rosenberger made

10   to make the drug runs for him to New York.

11              Specifically, admissions, when the parole

12   officer from the state testified, he said that the

13   defendant admitted that he stopped dealing drugs in

14   about January of '98 and that he would plead guilty if

15   he was asked to.  Incredibly significant because the

16   defendant's theory to the jury was everybody was a liar

17   and that he stopped dealing drugs when he went to

18   prison in '94.  So when the parole officer testified

19   that he made an admission, it was very significant.

20   The defendant took the stand and denied ever saying

21   that to Agent Forney with the probation office.

22              On cross-examination, he denied again

23   dealing with Heim on drugs.  Essentially, I think --

24   and specifically countered everything that the

25   government presented by way of witnesses as to his drug

1   involvement.  That is clearly beyond simply saying, I

2   didn't do this.  It's an affirmative attempt to subvert

3   the jury through perjury.

4            MR. THOMAS:  Mr. Behe, would you please

5   repeat what you were saying about the prior statement

6   to Mr. Forney?

7            MR. BEHE:  If the Court permits me to.

8            THE COURT:  Sure.

9            MR. BEHE:  At Page 30 of the defendant's

10  testimony at trial, he was asked if he had a

11  conversation with Forney.  Forney had testified that

12  the defendant admitted to him that he had stopped

13  dealing drugs in January of '98, which is four years

14  beyond what the defendant testified to at trial.

15           And the defendant said, Forney, no, I

16  didn't say nothing to him.  No, I didn't say anything

17  in front of him.

18           THE COURT:  Well, this is one objection

19  that does not cause any problem for me because I think

20  it's clearly been shown that there was obstruction of

21  justice.  Under the decision in U.S. versus Duncan, the

22  Supreme Court has made it clear that the right to

23  testify in one's defense does not include the right to

24  commit perjury.  The Court further defined perjury and

25  said perjury is committed when a witness gives false

1    testimony concerning a material matter and the

2    testimony is given with a willful intent to provide

3    false testimony.

4              The defendant in this case, based on the

5    references that Mr. Behe has made--and there are

6    others--the defendant denied involvement in dealing

7    drugs when it is clear from the evidence in the case,

8    as the jury found beyond a reasonable doubt, that he

9    was involved in the conspiracy alleged in the

10   indictment.

11             By virtue of the defendant's failure to

12   give truthful testimony on material matters--a failure

13   that, in my view, was designed to substantially affect

14   the outcome of the case--we conclude that the

15   defendant's false testimony at trial constitutes

16   perjury and warrants an upward adjustment in his

17   offense level of two points.

18             Are there additional objections which

19   affect the calculation of the sentence?

20             MR. THOMAS:  Yes, Your Honor.  The section

21   of the Pre-Sentence Investigation Report that relates

22   to criminal history computation, we believe that the

23   criminal history should be corrected.  In Paragraphs 38

24   and 39, actually through 40, it basically alleges that

25   there was some sort of activity while he was on parole

1    and in the halfway house.  And, again, there is just

2    simply no testimony that exists at all prior to this

3    case that would be involvement in any illegal activity

4    while in the halfway house.

5              THE COURT:  Well, let's take them one at a

6    time.  The first one was two points were added because

7    he committed the instant offense while in the halfway

8    house and under parole supervision.  Are you saying

9    that's not correct or shouldn't be added?

10             MR. THOMAS:  Yes, Your Honor, not that

11   there was any activity while he was in the halfway

12   house.

13             THE COURT:  Mr. Behe.

14             MR. BEHE:  Your Honor, that is just flatly

15   contradicted by the trial testimony that was presented

16   by Joseph Heim.  He testified that he met the defendant

17   when they were in the halfway house approximately April

18   of 1996, that they formed a relationship and a

19   friendship there.  While in the halfway house, the

20   defendant was supplying Mr. Heim or getting Mr. Heim

21   cocaine and Mr. Heim would distribute.

22             Mr. Bennett testified that he would pick

23   the defendant up while he was still in the halfway

24   house for the purpose of making drug deliveries.  The

25   defendant might deny it.  I think the jury's verdict

1  refutes that.

2            Regardless, it is kind of a joint position

3  that the probation takes.  Not only did he commit the

4  offense while in a halfway house, but he was under

5  parole supervision.  I think both apply regardless.

6  Even the second one that he was under state parole

7  supervision can't be denied.  That's just a fact.

8            THE COURT:  All right.  The second point,

9  Paragraph 39 adds one point because he committed this

10  offense less than two years after his release from

11  imprisonment.  Is there any objection to that?

12            MR. THOMAS:  No objection to that, Your

13  Honor.

14            THE COURT:  So it's just the two points in

15  Paragraph 38?

16            MR. THOMAS:  Yes, Your Honor.  Let me just

17  say to the --  You know, understand that counsel came

18  into this after the trial.

19            THE COURT:  I appreciate that.

20            MR. THOMAS:  If Mr. Behe's contention is

21  accurate, we'll just beg your indulgence for not being

22  accurate with our research.

23            THE COURT:  Well, I think his statement is

24  accurate, because I recall very clearly the testimony

25  about the activities that were going on while the

1    defendant was in the halfway house.  So I think if

2    there was an objection to Paragraph 38, we overrule it.

3    And those two points are already included in the

4    calculation.

5            Are there additional matters that affect

6    the calculation of the sentence?

7            MR. THOMAS:  Yes, Your Honor.  Mr. Hawkins

8    requests a downward departure from the guideline range

9    because of special circumstances that do exist,

10   particularly his post-conviction rehabilitation

11   efforts.

12           He has been incarcerated for some time

13   now.  And during that period of time, he has engaged in

14   a number of activities while he has been in prison to

15   rehabilitate himself and to help other prisoners,

16   including the teaching of English as a second language.

17   He has attended every self-improvement class or seminar

18   or other type of program that's been there.  He has

19   availed himself of all the different programs that have

20   been available to him at the prison.

21           THE COURT:  Let me just interrupt you

22   there.  I want to ask you a legal question.

23           MR. THOMAS:  Yes.

24           THE COURT:  I thought that the type of

25   rehabilitation you're talking about is rehabilitation

1    that occurred after his sentence is imposed and the

2    defendant, for one reason or another, may be

3    reappearing for resentencing.  Are these things that

4    the Court can consider in sentencing at this time?

5              MR. THOMAS:  I was looking, Your Honor, at

6    the _Sally_ decision.  I'll have to look -- _Sally_ is a

7    Third Circuit decision from 1997.

8              THE COURT:  Mr. Behe, can you shed any

9    light on this question?

10             MR. BEHE:  I'm afraid I can't point to any

11   specific decision that would answer the question for

12   Your Honor.  I would like to think that Your Honor

13   could make a finding that you do have the authority and

14   discretion to consider the request.

15             I would reserve my remarks to simply say

16   it's just inappropriate in this matter.  You aren't

17   hearing anything exceptional about this defendant.

18   This seems to me to be what is expected of individuals

19   who are incarcerated, that they engage in conduct that

20   will reform and rehabilitate themselves.  So I would

21   limit my argument to that.

22             THE COURT:  Ms. Baker, do you have

23   anything you want to say on this?

24             MS. BAKER:  I believe Mr. Hawkins made

25   post-offense rehabilitative effort, rather than post-

1  conviction rehabilitative effort.  We've seen a number

2  of people after pleading guilty that have taken a

3  number of steps prior to sentencing.  That may be what

4  Mr. Thomas is referring to.

5           THE COURT:  Well, I think this would

6  require my hearing testimony and evidence.  I mean

7  there's nothing in the record to reflect any of this

8  that I know of.

9           MR. THOMAS:  Your Honor, in response to

10  Mr. Behe's assertions, there's no requirement that any

11  inmate that's incarcerated really do anything other

12  than serve his time.

13           He has voluntarily taken upon himself to

14  assist and to help those who were in there to learn to

15  speak and read English and to help to improve

16  themselves and thereby bettering himself in the process

17  and, just again, to avail himself of all the other

18  programs that are available.  We'll certainly be happy

19  to provide any information in that regard.

20           THE COURT:  I read your sentencing

21  memorandum a week or so ago.  There may be something in

22  there about that.  I'm not sure.

23           Was there an objection concerning the

24  criminal history category?  I think the criminal

25  history category here is three.

1          MR. BEHE:  I think we resolved that, Your

2    Honor.  Those paragraphs that we went over where the

3    criminal history points were added, the two and the

4    one, that's what takes him to category three.  So I

5    think we've addressed that.

6          THE COURT:  But there is sometimes

7    objections to the fact that the criminal history

8    category overstates the seriousness of the prior

9    record.

10          MR. BEHE:  I don't believe there is that

11    objection in this case.

12          THE COURT:  Okay.  I don't think there is

13    either.

14          MR. THOMAS:  By the way, Your Honor, with

15    regard to the other special circumstances, the

16    defendant's family has recently had a tragic loss.  I

17    guess it was last week or a week and a half ago.  I

18    think it was on Linglestown Road.  There were six young

19    people that died at the hands of a drunken --

20          THE COURT:  Yes.

21          MR. THOMAS:  And the defendant's niece is

22    one -- cousin is one that was lost in that.  It's just

23    simply that during this time his family needs his

24    support.  It's my understanding that there are not that

25    many male figures there who can provide that kind of

1    support that only a male can give.  In light of that,

2    understanding how difficult this time must be, I just

3    pray for leniency.

4             THE COURT:  That's very sad and

5    regrettable.  I appreciate that and how the family has

6    to face those sorts of things.

7             Is that the final one then?

8             MR. THOMAS:  No, Your Honor.  Finally, the

9    defendant just simply has no ability to pay the fine.

10   While he's incarcerated, he does not have the ability

11   to be gainfully employed.  And with the term of this

12   sentence, it's going to be extremely difficult, if not

13   impossible, for him to pay this fine.

14            THE COURT:  Well, I think the

15   contemplation is that he will be able to earn funds

16   while he is incarcerated and that some of those funds

17   could be used to pay a fine.  But I will reconsider

18   that.

19            I think the only matter I haven't ruled

20   upon is the issue of relevant conduct.  Is that

21   correct?

22            MR. THOMAS:  I believe so.

23            THE COURT:  Whether that can be considered

24   to take the quantity of cocaine above the 15 kilograms.

25            MR. THOMAS:  Your Honor, it's not -- .

1    Certainly the relevant conduct alone would bring the

2    amount of drugs up over the 15-kilogram mark.  But even

3    if that's not considered, if I understand Mr. Behe's

4    contention, it is that even without the relevant

5    conduct that we're still -- your calculations are still

6    over 15, or no?

7            MR. BEHE:  When I calculated it, Your

8    Honor, without the drug weight that I'm considering the

9    relevant conduct, I came a little over 15 kilograms.

10           But when you're dealing with no seizures,

11   nothing tangible, and you're relying simply on the

12   memory of the individuals, I would be inclined to give

13   the defendant the benefit of the doubt if the drugs

14   aren't considered as part of relevant conduct.  If they

15   are, he's clearly over the 15-kilogram amount.  If they

16   aren't considered, I really, out of fairness to the

17   defendant, wouldn't be pushing that the drug weight

18   would take it in excess of 15, just because of the

19   vagaries of memory.

20           THE COURT:  That's very commendable,

21   Mr. Behe.  I think I was probably leaning in that

22   direction because of the uncertainty of these things.

23           We will go on the basis of five to fifteen

24   kilograms in imposing sentence.

25           I have an engagement.  I want to hear

1   statements from all of you prior to imposing sentence.

2   So I'm going to defer sentencing until 2 o'clock this

3   afternoon, if that's okay.  Everybody can make that, I

4   hope.

5           MR. BEHE:  Yes, sir.

6           MR. THOMAS:  Yes.

7           THE COURT:  We will adjourn until 2

8   o'clock at this point.

9           (Whereupon, at 11:45 a.m., the proceedings

10  recessed.)

11          (The proceeding recommenced this same day

12  and was reported by Vicki Fox, RMR.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3          I, Glenda S. Travitz, Registered Professional

4    Reporter, do hereby certify:

5          That I was duly authorized and did report the

6    proceedings in the above-entitled cause;

7          That the foregoing pages of this transcript

8    constitute a true and accurate transcription of my

9    stenotype notes;

10          I further certify that I am not an attorney

11   nor counsel of any of the parties, nor a relative or

12   employee of any attorney or counsel connected with the

13   action, nor financially interested in the action.

14

15   July 18, 2006                     _____
                                       Glenda S. Travitz, RPR
16

17

18

19

20

21

22

23

24

25