Monroe LuGene:Hawkins
c/o 2719 N. 5th Street
Harrisburg [17110]
Pennsylvania state

Date:

FILED
HARRISBURG, PA

SEP 0 2 2008

MARY E. D'ANDREA, CLERK
Per
Deputy Clerk

In Special Visitation
Under Protest and In
Propria Persona

## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| (Plaintiff) | § | |
| | § | |
| | § | Incorporated Case No. |
| v. | § | 1:01-cr-025-01 |
| | § | |
| | § | NOTICE AND DEMAND TO DISMISS FOR |
| Monroe LuGene Hawkins | § | LACK OF CRIMINAL JURISDICTION |
| (Defendant) | § | |

### PURSUANT TO TITLE 28 U.S.C. §1359
### F.R.C.P. 9(b), 12(b)(1),(2), 12(h)(3)

**COMES NOW**, Monroe LuGene Hawkings, Sui Juris, Citizen of Pennsylvania
state and Defendant in the above entitled matter (hereinafter "Defendant"),
to demand an immediate dismissal of the instant criminal case, with pre-
judice, for lack of criminal jurisdiction to proceed in the first instance,
ether over the subject-matter or over the Person or property of the Defen-
dant, and to provide formal Notice to all interested parties of same. De-
fendant hereby incorporates by reference all authorities cited in Exhibit
"A" Federal Criminal Jurisdiction, and in His MEMORANDUM OF LAW IN SUPPORT
OF CHALLENGE TO CRIMINAL JURISDICTION OF THIS COURT (i.e. **THERE IS NONE**),
Rule 301, 302; Federal Rules of Evidence, as if all were set forth herein.

KNOW ALL BY THESE PRESENTS:

I, Monroe LuGene Hawkins, Sui Juris, and Defendant in the above
entitle matter, hereby demand that this territorial (legislative)
tribunal dismiss the instant criminal case with prejudice because
it lacks exclusive jurisdiction over the exact geographical location
where the alleged criminal activity mentioned in the indictment is
alleged to have taken place. I was not arrested in any fort, magazine,
arsenal, dockyard, "needful building", or other federal enclave with-
in the Pennsylvania Republic, nor was My Person or My private proper-
ty situated within any of the aforementioned federal areas (a/k/a
the federal zone).

A very recent U.S. Supreme Court decision, dated April 26, 1995, ad-
dressed the issue of exclusive legislative jurisdiction of the Con-
gress, and the powers of the federal government. Justice Thomas, in
a concurring majority opinion in U.S. v: Lopez, 115 S.Ct. 1624 (1995),
131 L.Ed.2d 626, very clearly says:

> Indeed, on this crucial point, the majority and Justice Breyer
> (dissenting) agree in principle: the Federal Government has
> nothing approaching a police power. Id. -at page 64. Justice
> Thomas went on to discuss "a regulation of police" at page 86,
> wherein he stated as follows: U.S. v. DeWitt, 76 U.S. 41, 9
> Walls. 41, 19 L.Ed 593 (1870) marked the first time the court
> struck down a federal law as exceeding the power conveyed by
> the commerce clause. In a 2 page opinion, the court invalidat-
> ed a nationwide law prohibiting all sales of naphtha, and il-
> luminating oils. In so doing, the court remarked that the com-
> merce clause "has always been understood as limited by its
> terms; and as a virtual denial of any power to interfere with
> the internal trade and business of the separate states."
> Id. at page 44.

The law in question was "plainly a regulation of police,"' which could
have constitutional application only where Congress had exclusive au-
thority, such as the territories. Id. pp. 44-45. Earlier in the text,
Justice Thomas, Id. at page 85, said, "Even before Gibbons, Chief
Justice Marshall, writing for the Court in Cohens v. Virginia, 19
U.S. 264, 6 Wheat 264, 5 L.Ed 257 (1821), noted that Congress had

no general right to punish murder committed within any of the states,"
and  that Congress could not punish felonies generally. However, Con-
gress could enact laws for places where it enjoyed plenary powers,
for instance, over the District of Columbia, and whatever effect or-
dinary murders, or robbery, or gun possession might have on inter-
state commerce was irrelevant to the question of Congressional power.
The first Federal Criminal Act did not establish a nationwide pro-
hibition against murder and the like. See Act of April 30, 1790,
Chapter 9 (1 Stat. 112); rather, only when committed in United States
territories and possessions, or on the high seas. With the single ex-
ceptions of treason and/or counterfeiting, and notwithstanding any
of the effects which murder, robbery, and gun possession might have
on interstate commerce, Congress understood that it could not estab-
lish nationwide prohibitions.

Justice Thomas summed up his opinion dramatically with the state-
ment quoted in part herein: If we wish to be true to a Constitution
that does not cede a police power to the Federal Government...

1. "All federal crimes are statutory." Doble, "Venue and Crimin-
   al Cases in the United States District Court," Virginia Law
   Review, 287, 289 (1926). "...(O)n the other hand, since all
   Federal Crimes are statutory and all criminal prosecutions
   in the Federal territorial courts are based on Acts of Con-
   gress," Federal Rules of Criminal Procedure Rule 26, in
   "taking of testimony," notes of Advisory Committee on Rules,
   paragraph no.2.

2. Rule 54, Application and Exception, paragraph (c), Federal
   Rules of Criminal Procedure, "Act of Congress" includes any
   act of Congress locally applicable to and in force in the
   District of Columbia, in Puerto Rico, in a territory or in

:an insular possession.

3. There is no presumption in favor of jurisdiction, and the
   basis for jurisdiction must be affirmatively shown. Hanford
   v. Davis, 16 S.Ct. 1051, 163 U.S. 273, 41 L.Ed. 157 (1896).

4. See exact wording of Artical I, Section 8, Clause 17, Con-
   stitution for the United States of America, which grant of
   authority does not extend over every square inch of the 48
   contiguous Union States.

5. In principle, the exclusive legislative jurisdiction of the
   federal government is not addressed to subject matter, but
   to geographical location. See U.S. v. Bevans, 16 U.S. (3
   Wheat) 336 (1818).

6. It is axiomatic that the prosecution must always prove ter-
   ritorial jurisdiction over a crime in order to sustain a
   conviction therefore. U.S. v. Benson, 495 F.2d 475 at 481
   (1974). The jurisdictional challenge issue can never be
   waived by the Accused, nor acquiesced by the Accused, in the
   absence of a positive showing upon the record that jurisdic-
   tion was clearly and unambiguously established.

7. Without proof of the requisite ownership or possession by
   the United States, the crime has not been made out. U.S. v.
   Watson, 80 Fed. Supp. 649 (1948, E.D. Va.). Only in America
   can We be forced into the status of subjects of a foreign
   corporation by fiat legislation, and the stroke of a CEO's
   pen, at the point of a gun, and thereby be immediately di-
   vested of standing in judicio, and declared to be debtors
   and enemies of our Own government.

8. In criminal prosecutions, where the federal government is

the moving party, it must not only establish ownership of
the property upon which the crime was allegedly committed,
but it must also produce documentation that the state has
ceded to it jurisdiction over that property. It was held
by the U.S. Supreme Court in the case of Fort Leavenworth
Railway Co. v. Iowa, 114 U.S. 525 at 531 (1885):

> Where lands are acquired without such consent, the
> United States, unless political jurisdiction be ced-
> ed to them in some other way, is simply that of an
> ordinary proprietor.

9. No jurisdiction exists in the United States of enforce fed-
eral criminal laws until consent to accept jurisdiction over
acquired lands has been published and filed in behalf of the
United States, as provided in 40 U.S.C. 3111, and the fact
that the state authorized the government to take and exer-
cise jurisdiction was immaterial. See Adams v. United States,
319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed. 1421 (1943).

10. All counts of justice are duty-bound to take judicial no-
tice of the territorial extent of jurisdiction, although
those acts are not formally put into evidence, nor in ac-
cord with pleadings. Jones v. U.S., 137 U.S. 202, 11 S.Ct.
80 (1890).

11. Where a federal court is without jurisdiction of the of-
fense, judgment of conviction of the court and/or the jury
is void ab initio, on its face. Bauman v. U.S., 156 F.2d
534 (5th Cir. 1946).

12. Federal criminal jurisdiction is never presumed; it must
be proven; and it can never be waived. U.S. v. Rogers, 23

Fed. 658 (D.C., W.D. Ark., (1885).

13. The federal courts are limited both by the Constitution and
    Acts of Congress. Owen Equip. & Erection Co. v. Kroger, 98
    S.Ct. 2396, 437 U.S. 365, 57 L.Ed.2d 274 (1978).

14. The jurisdiction of federal courts is defined in the Con-
    stitution at Artical III for judicial courts; in Artical
    I for legislative courts; and in Artical IV for territorial
    courts. Some courts created by Acts of Congress have been
    referred to as "Constitutional Courts," whereas others are
    regarded as "Legislative Tribunals." O'Donoghue v. U.S.,
    289 U.S. 516 (1933), 77 L.Ed 1356, 53 S. Ct. 74; Mookini
    v. U.S., 303 U.S. 201 at 205 (1938), 82 L.Ed 748, 58 S.Ct.
    543.

15. Legislative court judges do not enjoy Artical III guaran-
    tees; "inherently judicial" tasks must be preformed by
    judges deriving power under Artical III. See U.S. v. Sand-
    ers, 641 F.2d 659 (1981), cert. den. 101 S.Ct. 3055, 452
    U.S. 918, 69 L.Ed 422. The United States District Court
    creation and composition were accomplished by Acts of Con-
    gress on June 25, 1948 (62 Stat. 895), and November 13,
    1963 (77 Stat. 331), currently codified at 28 U.S.C. 132;
    and the jurisdiction thereof, previously demonstrated here-
    in, i.e. Chapter 85 of Title 28, lists civil, admiralty,
    maritime, patent, bankruptcy, etc., and does not once list,
    mention, or describe any criminal jurisdiction. It just
    is not there, so don't bother looking for it!

16. Acts of Congress creating the United States District Courts
    do not vest said territorial tribunals with any criminal

jurisdiction; these courts have only such jurisdiction as is conferred upon them by Act of Congress under the Constitution. See Hubbard v. Ammerman, 465 F.2d 1169 (5th Cir., 1972), cert. den. 93 S.Ct. 967, 410 U.S. 910, 35 L.Ed. 2d 272.

17. The United States District Court is not a court general jurisdiction, and has no other power bestowed upon it except as prescribed by Congress. See Graves v. Snead, 541 F.2d 159 (6th Cir., 1976), cert. den. 97 S.Ct. 1106, 429 U.S. 1093, 51 L.Ed.2d 539.

18. It is apparent that the United States District Court for the District of Pennsylvania was created and established under 28 U.S.C. 132, and its jurisdiction is defined and limited by Chapter 85 of Title 28, United States Code.

19. The courts of appropriate jurisdiction for violations of Title 18 U.S.C. are designated at Section 3231, specifically naming them as "district courts of the United States" (sic).

20. There is a distinct and definite difference between a "United States District Court" and a "District Court of the United States." The words "District Court of the United States" commonly describe constitutional courts created under Artical III of the Constitution, not the legislative courts which have long been the courts of the Territories. See International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237 at 241 (1952), 72 S.Ct. 235, 96 L.Ed. 275, 13 Alaska 536.

21. The term "District Court of the United States" commonly describeds Artical III courts or "courts of the United States," and not legislative courts of the territories. See American Insurance Co. v. 356 Bales of Cotton, 1 Pet.

511 (1828), 7 L.Ed 242; International Longshoremen's and
Warehousemen's Union v. Wirtz, 170 F.2d 183 (9th Cir., 19-
48), cert. den. 336 U.S. 919, 93 L.Ed. 1082, 69 S.Ct. 641,
reh. den. 336 U.S. 971, 93 L.Ed 1121, 69 S.Ct. 936.

22. Though the judicial system set up in a territory of the
United States is a part of federal jurisdiction, the phrase
as not referring to "territorial courts." See Balzac v.
Porto Rico, 258 U.S. 298 at 312 (1921), 42 S.Ct. 343, 66
L.Ed. 627. In Balzac, the High Court stated.

The United States District Court is not a true United States
court established under Artical III of the Constitution to
administer the judicial power of the United States there-
in conveyed. It is created by virtue of the sovereign con-
gressional faculty, granted under Artical IV, Section 3,
of that instrument, of making all needful rules and reg-
ulations respecting the territory belonging to the United
States. The resemblance of its jurisdiction to that of
true United States courts in offering an opportunity to
nonresidents of resorting to a tribunal not subject to lo-
cal influence, does not change its character as a mere ter-
ritorial court. (emphasis added)

The distinction within the dual nature of the federal court sys-
tem is also noted in Title 18 U.S.C. 3241, which states that the
United States District Court for the Canal Zone shall have juris-
diction "concurrently with the district courts of the United States,
of offenses against the laws of the United States committed upon
the high seas."

This distinction is the reason why federal jurisdiction over pro-
secution is more than a technical concept; it is Constitutional
requirement. See U.S. v. Johnson, 337 F.2d 180, aff'd 383 U.S.
169 (1966), 86 S.Ct. 749, 15 L.Ed.2d 681, cert. den. 87 S.Ct. 44,
134, and 385 U.S. 846, 17 L.Ed.2d 77, 117.

23. Beside the recent Lopez decision, it is interesting to

note that at least two other courts, i.e. United States
District Courts have come to the same or similar conclus-
ions. See U.S.A. v. Wilson, Stambaughr, Skott, Ketchum,
Braun, and Ballin, Case No. 94-CR-140 (March 16, 1995)
(U.S.D.C. Wisconsin); and U.S. v. Kearns, Case No. SA-95-
CR-201 (October 6, 1995) (U.S.C., Texas).

24. Interestingly enough, in a bankruptcy case in the U.S.
Bankruptcy Court, Middle District of New Jersey   (Chapter
13), and Case No. 5-94-00839, title In re: Francis Patrick
Farrell v. IRS/BATF after the alleged debtor sued out a
compulsory counterclaim against the IRS/BATF after the al-
leged creditor submitted its proof of claim. The counter-
claim showed an extent of curruption unparalleled in Ameri-
can history, to which agencies of the federal government
will often resort, specifically by placing a "T-Code" on
someone's Individual Master File ("IMF").

In this way, the IRS/BATF used Admiralty and Maritime for-
feiture laws to deprive a State Citizen of property and as-
sets, and to mis-classify Him as a "high level narcotics
trafficker." This occurred on November 17, 1995! Why? See
U.S. v. Good 126 L.Ed.2d S.Ct. 490 at 502, footnote 2 (19-
93).

## SUMMARY

The United States District Courts have no criminal jurisdiction
whatsoever to prosecute a State Citizen within one of the 50 States
of the Union which comprises the United States of America, until
and unless Congress says so. Until and unless the federal govern-
ment can prove ownership over said geographical land mass, par-
ticulary that parcel of land which is the private real property
of the Defendant,/the United States District Courts have no cri-
minal jurisdiction whatsoever within the 50 Union States. Not a
single Act of Congress vests the United States District Courts,
as distinct from District Courts of the United States, with any-
Page 9 of 18

thing but "civil" authority. There is absolutely no criminal jurisdiction vested in said territorial tribunals.


REMEDY DEMANDED


Therefore, Defendant hereby demands that this Artical IV legislative tribunal establish exclusive jurisdiction by producing certified documents consisting of the following:

a. Documentation showing "United States" (federal government) ownership of each and every geographical location mentioned in the indictment, wherein the alleged criminal activity took place;

b. Documentation from the Pennsylvania Legislature which provides evidence of a cession by Pennsylvania state surrendering jurisdiction to the "United States" (federal government) over the same geographical location as stated in (a) above;

c. Documentation pursuant to Title 40 U.S.C. 3111, wherein the "United States" (federal government) accepted jurisdiction to the same geographical location as stated in (a) above, or, documentation showing concurrent jurisdiction with Pennsylvania state over the geographical location as stated in (a) above;

d. Alternatively, absent the requisite documentation, Defendant hereby demands that this United States District Court dismiss the in the interests of justice.


Executed on _____ ___,2008

/s/Monroe LuGene Hawkins

*Monroe LuGene Hawkins*

Monroe LuGene Hawkins
Citizen of Pennsylvania state

## Exhibit "A": Federal Criminal Jurisdiction

It is a well established principle of law that "all federal legisla-
tion applies only within the territorial jurisdiction of the United
States unless a contrary intent appears"; see Caha v. United States,
152 U.S. 211, 215, 14 S.Ct. 513 (1894); American Banana Company v.
United Fruit Company, 213 U.S. 347, 357, 29 S.Ct. 511 (1909); United
States v. Bowman, 260 U.S. 94, 97, 98, 43 S.Ct. 39 (9122); Blackmer
v. United States, 284 U.S. 421, 437, 52 S.Ct. 252 (1932); Foley Bros.
v. Filardo, 336 U.S. 281, 285, 69 S.Ct. 575 (!949); United States v.
Spelar, 338 U.S. 217, 222, 70 S.Ct. 10 (1949); and United States v.
First National City Bank, 321 F.2d. 14, 23 (2nd Cir., 1963). And this
principle of law is expressed in a number of cases from the federal
appellate courts; see Mckeel v. Islamic Republic of Iran, 722 F.2d
589 (9th Cir., 1983) (holding the Foreign Sovereign Immunities Act as
territorial); Meredith v. United States, 330 F.2d 9, 11 (9th Cir.,
1964) (holding the Federal Torts Claims Act as territorial); United
States v. Cotroni, 527 F.2d 708, 711 (2nd Cir., 1975) (holding federal
wiretap laws as territorial); Stowe v. Devoy, 588 F.2d 336, 341 (2nd
Cir., 1978); Cleary v. United States Lines, Inc. 728 F.2d 607, 609
(3rd Cir.,1984) (holding federal age discrimination laws as territo-
rial); Thomas v. Brown & Root, Inc., 745 F.2d 279, 281 (4th Cir., 19-
84) (holding same as Cleary, supra); United States v. Mitchell, 553
F.2d 996, 1002 (5th Cir., 1977) (holding marine mammals protection
act as territorial); Pfeiffer v. William Wrigley, Jr., Co., 750 F.2d
554, 557 (7th Cir., 1985) (holding age discrimination laws as ter-
ritorial); Airline Stewards & Stewardesses Assn. v. Northwest Airlines,
Inc., 267 F.2d 170, 175 (8th Cir., 1959) (holding Railway Labor Act
as territorial); Zahourek v. Arthur Young and Co., 750 F.2d 827, 829
(10th Cir., 1984) (holding age discrimination laws as territorial);
Commodities Futures Trading Comm. v. Nahas, 738 F.2d 487, 493 (D.C.
Cir., 1984) (holding commission's subpoena power under federal law as
territorial); Reyes v. Secretary of H.E.W., 476 F.2d 910, 915 (D.C.
Cir., 1973) (holding administration of Social Security Act as territo-
rial); and Schoenbaum v. Firstbrook, 268 F.Supp. 385, 392 (S.D.N.Y.,
1967) (holding securities act as territorial). But, because of stat-
utory language, certain federal drug laws operate extra-territorially

see United States v. King, 552 F.2d 833, 851 (9th Cir., 1976). The
United States has territorial jurisdiction only in Washington, D.C.,
the federal enclaves within the States, and in the territories and
insular possessions of the "United States". However, it has no ter-
ritorial jurisdiction over non-federally owned areas inside the ter-
ritorial jurisdiction of the States within the American Union. And
this proposition of law is supported by literally hundreds of cases.

As a general rule, the power of the United States criminally to pro-
secute is, for the most part, confined to offenses committed within
"it's jurisdiction". This is born out simply by examination of Title
18, U.S.C. Section 5 which defines the term "United States" in clear
jurisdictional terms. Section 7 contains the fullest statutory de-
finition of the "jurisdiction of the United States" (sic). The United
States District Courts have jurisdiction of offenses occuring within
the "United States", pursuant to Title 18, U.S.C., section 3231.

Examples of this proposition are numerous. In Pothier v. Rodman, 291
F. 311 (1st Cir., 1923), the question involved whether a murder com-
mitted at Camp Lewis Military Reservation in the State of Washington
was a federal crime. Here, the murder was committed more than a year
before the U.S. acquired a deed for the property in question. Pothier
was arrested and incarcerated in Rhode Island and filed a Habeas Cor-
pus petition seeking his release on the grounds that the federal
courts had no jurisdiction over an offense not committed in U.S. ju-
risdiction. The First Circut agreed that there was no federal juris-
diction and ordered his release. But, on appeal to the U.S. Supreme
Court, in Rodman v. Pothier, 264 U.S. 399, 44 S.Ct. 360 (1924), that
Court reversed; although agreeing with the jurisdictional principles
enunciated by the First Circuit, it held that only the federal court
in Washington State could hear that issue. In United States v. Unzeuta
35 F.2d 750 (8th Cir., 1929), the Eighth Circuit held that the U.S.
held that the U.S. had no jurisdiction over a murder committed in a
railroad car at Fort Robinson, the state cession statue being con-
strued as not including railroad rights- of-way. This decision was
reserved in United States v. Unzeuta, 281 U.S. 138, 50 S.Ct. 284 (19-
30), the court holding that the U.S. did have jurisdiction over the

railroad rights-of-way in Fort Robinson. In Bowen v. Johnson, 97 F.2d
860 (9th Cir., 1938), the question presented was whether jurisdiction
over an offense prosecuted in federal court could be raised in a peti-
tion for Habeas Corpus. The denial of Bowen's petition was reversed in
Bowen v. Johnson, 306 U.S. 19, 59 S.Ct. 442 (1939), the Court conclud-
ing that such a jursidictional challenge could be raised in a Habeas
Corpus petition. But the Court then addressed the issue, and found
that the U.S. both owned the property in question and had a state le-
gislative grant ceding jurisdiction to the United States, thus there
was jurisdiction in the United States to prosecute Bowen. But,if jur-
isdiction; see Adams v. United States, 319 U.S. 312, 63 S.Ct. 1122
(1943).

And the lower federal courts also require the presence of federal jur-
isdiction in criminal prosecutions. In Kelly v. United States, 27 F.
616 (D.Me., 1885), federal jurisdiction of a manslaughter committed
at Fort Popham was upheld when it was shown that the U.S. owned the
property where the offense occurred and the state had ceded jurisdic-
tion. In United States v. Andem, 158 F. 996 (D.N.J., 1908), federal
jurisdiction for a forgery offense was upheld on a showing that the
United States owned the property where the offense was committed and
the state had ceded jurisdiction of the property to the U.S. In Unit-
ed States v. Penn, 48 F.669 (E.D.Va., 1880), since the U.S. did not
have jurisdiction over Arlington National Cemetery, a federal larceny
prosecution was dismissed. In United States v. Lovely, 319 F.2d 673
(4th Cir., 1963), federal jurisdiction was found to exist by U.S.
ownership of the property and a state cession of jurisdiction. In Unit-
ed States v. Watson, 80 F.Supp. 649 (E.D.Va., 1948), federal criminal
charges were dismissed, the court stating as follow:

> Without proof of the requisite ownership or possession of the
> United States, the crime has not been made out. 80 F.Supp., at
> 651.

In Brown v. United States, 257 F. 46 (5th Cir., 1919), federal juris-
diction was upheld on the basis that the U.S. owned the post office
site where a murder was committed and the state had ceded jurisdict-

ion; see also England v. United States, 174 F.2d 466 (5th Cir., 1949); Krull v. United States, 240 F.2d 122 (5th Cir., 1957); Hudspeth v. United States, 223 F.2d 848 (5th Cir., 1955); and Gainey v. United States, 324 F.2d 731 (5th Cir., 1963). In United States v. Townsend, 474 F.2d 209 (5th Cir., 1973), a conviction for receiving stolen property was reversed when the court reviewed the record and learned that there was absolutely no evidence disclosing that the defendant had committed this offense within the jurisdiction of the United States. And the United States v. Benson, 495 F.2d 475 (5th Cir., 1974), in finding federal jurisdiction for robbery committed at Fort Rucker, the court stated:

> It is axiomatic that the prosecution must always prove territorial jurisdiction over a crime in order to sustain a conviction therefore 495 F.2d, at 481.

In two Sixth Circuit cases, United States v. Ticker, 122 F. 518 (W.D. Ky., 1903), a case involving an assault committed at a federal dam, and United States v. Blunt, 558 F.2d 1245 (6th Cir., 1977), a case involving an assault within a federal penitentiary, jurisdiction was sustained by finding that the U.S. owned the property in question and the state involved had ceded jurisdiction. In Kelly, 71 F. 545 (E.D. Wis., 1895), a federal assault charge was dismissed when the court held that the state cession statute in question was not adequate to convey jurisdiction of the property in question to the United States. In United States v. Johnson, 426 F.2d 1112 (7th Cir., 1970), a case involving a federal burglary prosecution, federal jurisdiction was sustained upon the showing of U.S. ownership and cession. And cases from the Eighth and Tenth Circuits likewise require the same elements to be shown to demonstrate the presence of federal jurisdiction; see United States v. Heard, 270 F.Supp. 198 (W.D.Mo., 1967); United States v. Redstone, 488 F.2d 300 (8th Cir., 1973); United States v. Goings, 504 F.2d 809 (8th Cir., 1974) (demonstrating loss of jurisdiction); Hayes v. United States, 367 F.2d 216 (10th Cir., 1966); United States v. Carter, 430 F.2d 1278 (10th Cir., 1970); Hall v. United States, 404 F.2d 1367 (10th Cir., 1969); and United States v. Cassidy, 571 F.2d 534 (10th Cir., 1978).

Page 14 of 18

Of all the circuits, the Ninth Circuit has addressed jurisdictional is-
sues more than any of the rest. In United States v. Bateman, 34 F. 86
(N.D.Cal., 1888), it was determined that the United States did not have
jurisdiction to prosecute for a murder committed at the Presidio because
California had never ceded jurisdiction; see also United States v. Tully
140 F. 899 (D.Mon., 1905). But later, California cede jurisdiction for
the Presidio to the United States, and it was held in United States v.
Watkins, 22 F.2d 437 (N.D.Cal., 1927), that this enabled the U.S. to
maintain a murder prosecution; see also United States v. Holt, 168 F.141
(W.D. WAsh., 1909), United States v. Lewis, 253 F. 469 (S.D.Cal., 1918),
and United States v. Wurtzbarger, 276 F. 753 (D.or., 1921). Because the
owned, and had a state cession of jurisdiction for, Fort Douglas in Utah
it was held that the U.S. had jurisdiction for a rape prosecution in Ro-
gers v. Squier, 157 F.2d 948 (9th Cir., 1946). But, without a cession,
the U.S. has no jurisdiction; see Arizona v. Manypenny, 445 F.Supp. 1123
(D.Ariz., 1977).


The above cases from the U.S. Supreme Court and federal appellate courts
set forth the rule that in criminal prosecutions, the government, as the
party seeking to establish the existence of federal jurisdiction, must
prove U.S. ownership of the property in question and a state cession of
jurisdiction. This same rule manifests itself in state cases. State
courts are courts of genreal jurisdiction and in a state criminal prose-
cution, the state must only prove that the offense was committed within
the state and county thereof. If a defendant contends that only the fed-
eral government has jurisdiction over the offense, he, as proponent for
the existence of federal jurisdiction, must likewise prove U.S. owner-
ship of the property where the crime was committed and state cession of
jurisdiction.


Examples of the operation of this principle are numerous. In Arizona,
the State has jurisdiction over federal lands in the public domain, the
state not having ceded jurisdiction of that property to the U.S.; see
State v. Dykes, 114 Ariz. 592, 562 P.2d 1090 (1977). In California, if
it is not proved by a defendant in a state prosecution that the state
has ceded jurisdiction, it is presumed the state does have jurisdiction

over a criminal offense; see People v. Brown, 69 Cal. App.2d 602, 159
P.2d 686 (1945). If the cession exists, the state has no jurisdiction;
see People v. Mouse, 203 Cal. 782, 265 P. 944 (1928). In Montana, the
state has jurisdiction over property if it is not proved there is a
state cession of jurisdiction to the U.S.; see State ex rel Parker v.
District Court, 147 Mon. 151, 410 P.2d 459 (1966): the existence of a
state cession of jurisdiction to the U.S. ousts the state of jurisdic-
tion; see State v. Tully, 31 Mont. 365, 78 P. 760 (1904). The same ap-
plies in Nevada; see State v. Mack, 23 Nev. 359, 47 P. 763 (1897), and
Pendleton v. State, 734 P.2d 693 (Nev., 1987); it applies in Oregon
(see State v. Chin Ping, 91 Or. 593, 176 P. 188 (1918) and State v. Ag-
uilar, 85 Or. App. 410, 736 P.2d 620 (1987); and in Washington (see
State v. Williams, 23 Wash. App. 694, 598 P.2d 731 (1979).

In People v. Hammond, 1 Ill.2d 65, 115 N.E.2d 331 (1953), a burglary
of an IRS office was held to be within state jurisdiction, the court
holding that the defendant was required to prove existence of federal
jurisdiction by U.S. ownership of the property and state cession of
jurisdiction. In two cases from Michigan, larcenies committed at U.S.
Post Offices which were rented were held to be within state jurisdic-
tion; see People v. Burke, 161 Mich. 397, 126 N.W. 446 (1910) and Peo-
ple v. Van Dyke, 276 Mich. 32, 267 N.W. 778 (1936), see also Kelly,
311 Mich. 596, 19 N.W.2d 218 (1945). In Kansas City v. Garner, 430 S.W.
2d 630 (Mo. App., 1968), state jurisdiction over a theft offense occur-
ring in a federal building was upheld, and the court stated that a de-
fendant had to show federal jurisdiction by proving U.S. ownership of
the building and a cession of jurisdiction from the state to the United
States. A similar holding was made for a theft at a U.S. missile site
in State v. Randall, 146 Mon. 64, 404 P.2d 327 (1965). In Pendelton v.
State, 734 P.2d 693 (Nev., 1987), the state court was held to have ju-
risdiction over a DUI ("driving under the influence') committed on fed-
eral lands, the defendant having failed to show U.S. ownership and state
cession of jurisdiction.

In People v. Gerald, 40 Misc.2d 819, 243 N.Y.S.2d 1001 (1963), the state
was held to have jurisdiction of an assault at a U.S. Post Office since
the defendant did not meet his burden of showing presence of federal ju-

risdiction; and because a defendant failed to prove title and jurisdiction in the United States for an offense committed at a customs station, state jurisdiction was upheld in People v. Fisher, 97 A.D.2d 651, 469 N.Y.S.2d 187 (A.D. 3 Dept., 1983). The proper method of showing federal jurisdiction in state court is demonstrated by the decision in People v. Williams, 136 Misc.2d 294, 518 N.Y.S.2d 751 (1987). This rule was likewise enunciated in State v. Burger, 33 Ohio App.3d 231, 515 N.E.2d 640 (1986), in a case involving a DUI offense committed on a road near a federal arsenal.

In Kuerschner v. State, 493 P.2d 1402 (Okl.Cr.App., 1972), the state was held to have jurisdiction of a drug sales offense occurring at an Air Force Base, the defendant not having attempted to prove federal jurisdiction by showing title and jurisdiction of the property in question in the United States; see also Towry v. State, 540 P.2d 597 (Okl. Cr.App., 1975). Similar holdings for murders committed at U.S. Post Offices were made in State v. Chin Ping, 91 Or. 593, 176 P.188 (1918), and in United States v. Pate, 393 F.2d 44 (7th Cir., 1968). Another Oregon case, State v. Aguilar, 85 Or.App. 410, 736 P.2d 620 (1987), demonstrates this rule. And finally, in Curry v. State, 111 Tex. Cr. 264, 12 S.W.2d 796 (1928), it was held that, in the absence of proof that the state had ceded jurisdiction of a place to the United States, the state courts had jurisdiction over an offense.

Therefore, in federal criminal prosecutions, the government must prove the existence of federal jurisdiction by showing U.S. ownership of the place where the crime was committed and state cession of jurisdiction. If the government contends for the power criminally to prosecute for an offense occurring outside "it's jurisdiction", it must prove an extra-territorial application of the statute in question as well as a constitutional foundation supporting the same. Absent this showing, no federal prosecution can be commenced for offenses committed outside "it's jurisdiction", i.e. the federal zone.

## PROOF OF SERVICE

I Monroe LuGene Hawkins, Sui Juris, hereby certify, under penalty of perjury, under laws of the United States of America, without the "United States," that I am at least 18 years of age, a Citizen of one of the United States of America, and that I personally served the following document(s):

NOTICE AND DEMAND TO DISMISS FOR LACK
OF CRIMINAL JURISDICTION: Pursuant to Title
28 U.S.C. §1359; FRCP Rules 9(b), 12(b)(1), (2), 12(h)(3)

by placing one true and correct copy of said document(s) in first class United States Mail, with postage prepaid and properly addressed to the following:  On this _____2008,

1) William A Behe
   Office of the United States Attorney
   Federal Courthouse
   228 Walnut Street
   P.O. Box 117 54
   Harrisburg, PA. 17108

2) Deputy Clerk of Court
   U.S. Middle District Court
   228 Walnut Street
   Harrisburg, PA. 17108

3) Judge William A Caldwell
   U.S. Middle District Court
   228 Walnut Street
   Harrisburg, PA. 17108

4) Thomas A. Thornton
   Federal Public Defender
   100 Chestnut Street #306
   Harrisburg, PA. 17101